STATE EX REL. STOCK, Appellant, vs. KUBIAK,
Sheriff, Respondent.*

*November 7—December 2, 1952.*

\* Motion for rehearing denied, with $25 costs, on March 3, 1953.

*Brooke Tibbs* and *Howard H. Boyle, Jr.,* both of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General* and *William J. McCauley,* district attorney of Milwaukee county, *Herbert L. Mount,* special prosecutor, and *Ben J. Wiener,* special assistant district attorney, and oral argument by *Mr. Mount* and *Mr. Wiener.*

GEHL, J. The statute which the defendant is charged with having violated is as follows:

"348.28 (1) Any officer, agent, or clerk of the state or of any county, town, school district, school board, or city therein, or in the employment thereof, or any member of any town board, . . . who shall have, reserve, or acquire any pecuniary interest, directly or indirectly, present or prospective, absolute or conditional, in any way or manner, in any purchase or sale of any personal or real property or thing in action, or in any contract, proposal, or bid in relation to the same, or in relation to any public service, or in any tax sale, tax title, bill of sale, deed, mortgage, certificate, account, order, warrant, or receipt made by, to, or with him in his official capacity or employment, or in any public or official service, or who shall make any contract or pledge, or contract any indebtedness or liability, or do any other act in his official capacity, or in any public or official service not authorized or required by law, . . . shall be imprisoned in the county jail not more than one year, or in the state prison not more than five years, or fined not exceeding $500."

The question presented is whether the indictment alleges facts sufficient to charge a violation of the statute.

Relator contends that he is not alleged to have been a public "officer" of the town. The statute does not limit its application to officers; it expressly covers and includes agents.

The state does not contend that relator acted as an officer of the town.

We consider that by the provisions of sec. 60.29 (3), Stats., the town board had authority to employ him as its agent for the services which it was contemplated he should perform. The statute provides:

"*Legal advice, other help.* To procure legal advice when needed in the conduct of town affairs and employ counsel for that purpose; also such stenographic, clerical, and expert help as may from time to time be necessary in the conduct of the affairs of the town and the promotion of the financial welfare; . . ."

If there were doubt that the provisions of this statute authorize the employment of the relator we think that even in the absence of the statute the relator must be considered to have been an agent of the town within the contemplation of sec. 348.28, Stats. If we were required to concede that the town board was without authority to appoint him as its agent, the fact still remains that he assumed the duty of aiding in the proceedings for the issuance and sale of the bonds and the obligation of dealing fairly and in the best financial interests of the town. Regardless of whether the town board was authorized to appoint him, it did authorize his participation in the transactions and he acted as its agent; he was its agent in fact. It seems to us that it would be a travesty of justice if the relator were permitted to serve the town and receive compensation for such service and when called upon to answer for his misconduct could avoid punishment by the plea that the town was without authority to engage him.

"He acted for, and permitted himself to be held out as the agent of. . . . He was a *de facto* servant, and it is unnecessary that his relation should have grown out of a lawful contract of agency. It was enough if he acted, and was permitted to act, as such." *People v. Hawkins,* 106 Mich. 479, 484, 64 N. W. 736.

Relator urges that when the legislature of 1949 adopted ch. 365, Laws of 1949, it indicated a purpose to forbid only those "officers" who have the duty of voting on the issuance of public securities from purchasing the same. By that chapter the following sentence was added to sec. 348.28 (2), Stats.:

"(2) . . . The provisions of this section shall not apply to any officer of any . . . town, . . . who is a member of a firm or an officer or stockholder of a corporation purchasing any bond or security of such . . . town, . . . provided the sale of such bond or security is made to the highest bidder and such public officer has no duty to vote upon the issuance thereof."

We do not construe the amendment as evidence of a purpose to extend the exemption to agents and employees. If that had been the intent of the legislature it could easily have expressed it by deletion from the provisions of sec. 348.28 (1), Stats., of the words "agent" and those which extend its application to persons in "official employment." Whatever the legislature may have intended when it exempted officers of a town who have no duty to vote upon the issuance of its bonds from the application of sec. 348.28, it certainly does not appear that it was intended to permit its agents and employees to violate their trust by engaging in transactions resulting in financial loss to the municipality or to use their position in a manner so as to permit a corporation controlled by them to obtain securities of the municipality at a price lower than might have been received upon competitive bidding.

Relator contends that the indictment is defective in that it fails to allege that in the transactions set forth he acted "in any public or official service" or "in his official capacity." The statute condemns not only the transactions of one acting in an official capacity or in a public or official service; it reaches also those who operate in their "official *employment*."

As we have already pointed out, the relator was acting at least as a *de facto* servant of the town—he was in the town's employ and his violations occurred in such employment. In *State v. Bennett*, 213 Wis. 456, 462, 252 N. W. 298, this court recognized that one in that status would seem to be covered by the statute. The court said:

"Thus there are many persons in municipal employment who are not municipal officers in the sense first stated, although so considered in common parlance, but who have duties to perform in respect to certain contracts, but do not act for the municipality in actually negotiating or entering into the contracts. A city attorney or a city engineer not elected but appointed by the city council, might be held not to be an officer in the sense stated, but in giving advice or passing upon the legal aspects or the engineering features involved, would be acting for the city and as the agent of the city in determining in respect to those matters and would, it would seem, be covered by the statute."

The word "official" characterizing the employment should not be construed in the limited sense of pertaining only to the acts of those technically known as officers. Webster defines the word "official" as "of or pertaining to an office, position, *or trust.*" When the purpose of the statute is considered, it appears to us that it is in that sense that the word is used.

Relator insists that under the rule of *State v. Bennett, supra,* the order must be reversed. In that case it appeared that during the time of the transactions involved defendant was the city planning engineer of Milwaukee, and as such also assistant of the board of public land commissioners of the city. He was also a member of an unofficial committee appointed by the city superintendent of schools to make surveys of future school areas and recommend plans for school development and the location and procurement of school sites.

In November, 1926, he prepared a plan or map of "suggested development." Included in the map was a tract later platted as "Parkway Manor." In 1926 defendant and six

others organized the Triangle Company which purchased Parkway Manor in January, 1927. In April of that year the unofficial school committee recommended purchase of block 3 of Parkway Manor. The Triangle Company, through a broker, offered to sell block 3 to the school board. The building committee of the board, of which defendant was not a member, recommended acceptance of the offer. It was accepted. Defendant participated in the profit which the Triangle Company made on the deal. He was indicted for malfeasance, violation of sec. 348.28, Stats.

This court upon a certification by the trial court under sec. 358.08, Stats., of questions for answer, held by a four to three decision that because the defendant as city planning engineer did not in his official capacity perform any duty in the transaction, and the sale was not made by, to, or with him in his official capacity or employment he was not guilty of violation of sec. 348.28. In that case the defendant had no official duty with respect to the purchase of the land. Although he was the city planning engineer and a member of the unofficial school-survey committee, he did not act in the transaction in either capacity. The court said (p. 468) :

"As Bennett had no legal duty as such agent or clerk of the city to act, and did not act for it in any manner in making the purchase by the city, the fact that he had a pecuniary interest in the property purchased and the commission to be paid to the broker did not bring him within the condemnation of sec. 348.28, . . ."

That is not the situation in the instant case. Relator had a duty to act for the town in the sale of the bonds; that was his principal duty in the performance of which he acted in a manner prohibited by the statute. The facts in this case more nearly resemble those supposed by the court when it said in the *Bennett Case* (p. 465) :

"It would certainly have sufficed to sustain a conviction, if the purchase of the property, in which Bennett had a pecuni-

ary interest, had been made by him on behalf of the city in his official capacity or employment, even though he had not also acted or participated in some manner, on behalf of himself or the corporation in which he was interested."

The sale of the bonds of the town of Lake by relator was made by him on its behalf in his official employment.

*By the Court.*—Order affirmed.

Brown, J., took no part.